UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JOHN BOOTH** | **CIVIL ACTION** |
| **VERSUS** | **NO:  13-6746** |
| **MOHAVE TRANSPORTATION INSURANCE COMPANY, ET AL.** | **SECTION: "H" (4)** |

### ORDER

Before the Court are Defendants, Swift Transportation Co. of Arizona, L.L.C., Swift Leasing Co., L.L.C., Alton Blackwell and Red Rock Risk Retention Group, Inc.'s (collectively "Defendants") **Motion to Compel Second Independent Medical Examination(R. Doc. 40)** seeking an Order from this Court to order Plaintiff, John V. Booth ("Booth") to appear for a second independent medical examination ("IME") pursuant to Federal Rules of Civil Procedure ("Rule") 35(a). *Id.* The motion is opposed. *See* R. Doc. 41. A supplemental memorandum was also filed. *See* R. Doc. 47. It was heard by oral argument on July 30, 2014.

### I.      Background

Booth initially instituted this action in the 24th Judicial District Court for the Parish of Jefferson, Louisiana, for the damages and personal injuries he allegedly sustained in a vehicle collision on January 17, 2013, in Jefferson Parish, Louisiana. *See* R. Doc. 1, p. 2. The action was removed to this Court on December 20, 2013, pursuant to 28 U.S.C. § 1332. *Id.* at p. 2, ¶ 2.

More specifically, Booth alleges that he was struck from behind by a tractor trailer, which was owned by Defendant, Swift Leasing Co., LLC., and / or Swift Transportation Co. of Arizona, LLC., and was being driven by defendant, Alton Blackwell. *Id.* at p. 3, ¶ 5. Booth further alleges that

at the time of the accident, Blackwell was acting in the course and scope of his employment with Swift. *See* R. Doc. 1-1, p. 1, ¶ 1-2. Thus, Booth instituted the instant action against these defendants as well as Mohave Transportation Insurance Company, Swift's insurer, for the damages he allegedly sustained as a result of the January 17, 2013 accident. *Id.* He later supplemented and amended the complaint, asserting a new claim against a new defendant, Red Rock Risk Retention Group Inc., a/k/a Red Rock Insurance Company. *See* R. Doc. 15, p. 3.

Defendants contend that Booth sought treatment for his alleged neck pain from Dr. Rand Voorhies, a consulting neurosurgeon, from July 2013 through September 2013. *See* R. Doc. 40-1, p. 2. During his visits with Dr. Voorhies, Booth reported neck pain first as a 5 out of 10 in July 2013, and in September, 2013 as a 10 out of 10. *Id.* at 3; R. Doc. 40-2, p.1-2. Dr. Voorhies recommended a professional back brace, an orthopedic consultation for Booth's left hip, and an interventionalist for consideration of a targeted left C4–5 cervical facet injection in his neck.

Defendants contend that Booth was then referred to Dr. Joseph Crapanzano of Parish Pain Specialists, who found that - upon physical examination - Booth's neck problems were due to an aggravation of pre-existing degenerative arthritis in Booth's neck. *See* R. Doc. 40-1, p. 2-3. Defendants contend that Dr. Crapanzano performed epidural steroid injections in November and December, 2013, and performed a radio frequency ablation procedure on January 14, 2014. *See id., see also* R. Doc. 40-3, p. 2-4.

The records reveal that Booth again visited Dr. Crapanzano on February 17, 2014, and indicated that he had between 80-90% pain relief with respect to the neck pain he allegedly suffered due to the accident involved in this action. *Id.* at p. 3; *see also* R. Doc. 40-4, p. 1. During this visit Booth also reported that he was able to move his head around without pain following the radio

frequency ablation procedure, but that he still suffered from low back and left hip pain, which he contends were also a result of the accident involved in this litigation. *Id.* Dr. Crapanzano's impression reported that Booth suffered from left and right hip arthritis and diffuse disc degenerative disease of the lumbar spine. *See* R. Doc. 40-4, p. 3.

Shortly thereafter, on February 25, 2014, Booth was seen by Dr. Robert Applebaum for an independent medical examination ("IME"), and evaluated Booth's condition. *See* R. Doc. 40-5. After this visit, Dr. Applebaum's written findings indicate his impression of Booth's condition was that he showed minimal "mechanical findings of the neck and back, with no neurologic deficit." *See* R. Doc. 40-5, p. 3.

Dr. Applebaum also found that the MRI from August 2013 showed evidence consistent with a finding of degenerative disc disease that preexisted Booth's January 2013 accident. *Id.* He also indicated that he found no evidence of a herniated disc, nerve root irritation, or compression of Booth's cervical spine. *Id.*

Dr. Applebaum also reviewed Booth's CT Scan from September 2013, which he opined revealed evidence of diffuse, moderate to severe degenerative changes in the facet joints of the cervical spine. *Id.* at p. 4. Dr. Applebaum noted these changes were particularly severe at C4 on the left, with narrowing of the C3-4, and C5-6 disc spaces. Dr. Applebaum indicated that Booth suffered from "diffuse degenerative disc disease of the cervical spine" and that his current symptoms "represent temporary aggravation or acceleration of his underlying degenerative disc disease, although he was previously asymptomatic." *Id.*

Dr. Applebaum also found that Booth had mild degenerative changes in his lumbar spine, and that if his symptoms became worse, he may benefit from a cervical and lumbar myelogram,

followed by CAT scans of both areas to determine the extent of his intraspinal disease. *Id.* Dr. Applebaum last opined that if Booth's symptoms persist, there would likely be an other explanation for his injury other than the accident at the center of this dispute, which may be a result of a natural progression of degenerative disc disease. *See* R. Doc. 40-5, p. 4.

The record evidences that on June 6, 2014, Booth visited Dr. Voorhies, and reported that although he has been under non-operative treatment with Dr. Crapanzano for quite some time now, he began suffering from neck pain again for approximately two months. *See* R. Doc. 40-7, p. 1. Booth reported that his neck pain was a level 3 out of 10, and that his left shoulder pain rated as a 2 out of 10. *Id.* Upon examination, Dr. Voorhies found that Booth was injured and remains symptomatic from the accident that is at the center of this litigation. *Id.* at 5. Dr. Voorhies thus recommended that Booth obtain a posterior cervical fusion at C4-C5, as well as obtain a utilization of lateral mass screws and rod implants. *Id.* He further recommended that Booth obtain supplementation with a midline braided titanium intraspinous cable, a local bone graft, as well as a bone bank bone supplementation. *Id.*

Shortly thereafter, on June 11, 2014, Booth's deposition was taken. During the deposition, Booth testified that although he had been obtaining treatment from Dr. Crapanzano, his neck pain returned, which prompted him to visit Dr. Voorhies. *See e.g.,* R. Doc. 40-6. Booth further testified that during his visit with Dr. Voorhies, surgery was recommended. *Id.* at p. 2. Booth indicated that he sought to have the fusion surgery sometime later this fall, after hurricane season. *Id.*

As to the instant motion, Defendants now seek to compel a second independent medical examination of Booth, because they contend that although Booth had "reported 80-90% relief of his neck pain," his deposition testimony, and recent recommendation for a cervical fusion, by Dr.

4

Voorhies, necessitate obtaining a second IME, by Dr. Robert Applebaum.

## II. Standard of Review

Rule 35 provides in pertinent part that a court may order a party "to submit to a physical or mental examination by a suitably licensed or certified examiner" when the mental or physical condition of that party is in controversy. Fed. R. Civ. P. 35(a)(1). The court may issue such an order "on motion for good cause and upon notice to all parties and the person to be examined" which specifies "the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it." *See* Fed. R. Civ. P. 35(2).

Thus, there is a two-part test for determining whether the motion will be granted. First, the physical or mental state of the party must be in controversy. Second, the moving party must show good cause as to why the motion should be granted. *Schlagenhauf v. Holder*, 379 U.S. 104, 106 (1964). "Good cause" requires a showing of specific facts that demonstrate the need for the information sought and lack of means for obtaining it elsewhere. *Id.* at 118. A "plaintiff in a negligence action who asserts mental or physical injury places that mental or physical injury clearly in controversy and provides the defendant with good cause for an examination to determine the existence and extent of such asserted injury." *Id*. at 119.

"The decision as to whether or not to order an independent medical examination under Rule 35(a) rests in the court's sound discretion." *Glaze v. Bud's Boat Rental, Inc.*, No. 93-1334, 1993 WL 441890, at *1 (E.D. La. Oct. 21, 1993) (citing *Cola-Cola Bottling v. Torres*, 255 F.2d 149 (5th Cir. 1958). Furthermore, "[a]lthough Rule 35 examinations may be ordered 'only on motion for good cause shown,' and use of the rule to compel such examinations is not unfettered, Rule 35(a) generally has been construed liberally in favor of granting discovery." *Grossie v. Fla. Marine*

*Transporters, Inc.*, No. 04-0699, 2006 WL 2547047, at *2 (W.D. La. Aug. 31, 2006).

### III.  Analysis

Defendants contend that a second IME of Booth is necessary to determine the scope and extent of his injuries following the recent recommendation for surgery after an eight month gap in treatment with his neurosurgeon, Dr. Voorhies. *See* R. Doc. 40-1, p. 1.  Defendants further contend that the second IME is necessary to assess whether any material changes have occurred in Booth's medical condition since the first IME in February 2014, which would warrant surgery in Booth's neck. *Id.* at 2.  Defendants argue that they scheduled the IME for July 31, 2014, but Booth contested appearing for it, which necessitated the filing of the instant motion.

Rule 35 requires that an IME may be ordered where a movant demonstrates first, that the physical or mental state of the party must be in controversy.  Second, the moving party must show good cause as to why the motion should be granted.  *Schlagenhauf v. Holder*, 379 U.S. 104, 106 (1964).  *See also Jackson v. Entergy Operations, Inc.,* No. 96-4111, 1998 28272, at *2 (E.D. La. Jan. 26, 1998).

The Court notes that by its terms, Rule 35 does not limit the number of examinations a party may be required to undergo. *Davis v. Baker Hughes Oilfield Operations, Inc*., No. 05-2679, 2007 WL 1558721, at *2 (E.D. La. May 29, 2007); *Jackson*, 1998 WL 28272, at *2 (E.D.La. Jan.26, 1998); *Moore v. Calavar Corp*., 142 F.R.D. 134, 135 (W.D.La.1992). "Each request for an independent medical examination must turn on its own facts, and the number of examinations a party may be subjected depends solely upon the circumstances underlying the request." *Jackson.*, 1998 WL 28272, at *2. However, where "the moving party has already made an examination in the past, . . . the court will require a stronger showing of necessity before it will order repeated

examinations." *Davis,* 2007 WL 1558721 at *2; *Case v. JFP Offshore, Inc.*, No. 95-3239, 1996 WL 210720 at *1 (E.D.La. April 29, 1996).

The Court shall analyze each prong of Rule 35 below:

### A. Physical / Mental State for the IME

Defendants contend that Booth's physical condition is "clearly at issue" in this matter as this litigation centers around a motor vehicle accident for which Booth claims personal injuries. *See* R. Doc. 40-1, p. 5. Thus, Defendants contend that the first prong of Rule 35's test is satisfied.

In opposition, Booth contends that his physical state is not in controversy, as it "clear from the objective diagnostic tests done that Booth suffered an acute injury to a cervical disc in his spine from an automobile accident." *See* R. Doc. 41, p. 2. Booth contends that all doctors who have treated him following the January 2013 accident have agreed with this assessment. Booth argues however, that because Defendants seek to "mount a causation defense in this case" that he is suffering from pre-existing injuries, the intent for the second IME does not amount to Booth's physical state being at issue. *Id.*

Here, the Court finds that it is clear that Booth's physical condition is at issue, regardless of defendants intent to allegedly amount a causation defense, as Booth instituted this action alleging a neck injury from the January 2013 accident. Thus, the Court finds that Booth's physical condition is at issue.

### B. Good Cause

Defendants contend that due to Booth's change in therapy, Dr. Voorhies recent recommendation for a cervical fusion, and Booth's deposition testimony that he intends to have the cervical fusion performed later this year, good cause exists to warrant the allowance of obtaining

a second IME. *See* R. Doc. 40-1, p. 5.

In opposition, Booth contends that good cause does not exist to warrant a second IME because Defendants have not established a necessity to obtain a second IME. *See* R. Doc. 41, p. 3. Specifically, Booth contends that he has not undergone a substantial change in his condition, as he was not necessarily obtaining "conservative treatment" because it involved two facet block injections and a radio frequency nerve ablation procedure. Thus, Booth contends that the recommendation for surgery in light of these "far from conservative treatments" is not a substantial change. *Id.* As such, Booth contends that Defendants have not established their heightened burden that good cause exists to warrant the allowance of obtaining a second IME.

Although Rule 35 does not limit a party to one medical examination, *good cause* under Rule 35, may entitle a party to obtain more than one examination if the circumstances of an action warrant the same. *Roberts v. AC Marine, Inc.,* No. 12-2317, 2013 WL 1814923, at *4 (E.D. La. Apr. 29, 2013); *Moore v. Calavar Corp.,* 142 F.R.D. 134, 135-36 (W.D.La. 1992); *Davis,* 2007 WL 1558721, at *2. Examples of circumstances which have been held sufficient to justify second examinations include: "separate injuries calling for examination by distinct medical specialities; . . . where the first examination was not adequate or complete; and [or . . .] where a substantial 'time lag' occurred between the initial examination and the trial." *Id.*

Regardless of these circumstances however, Rule 35(a) examinations, "like all other forms of discovery, are subject to the general provision of Rule 26(c) that the court may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *Roberts,* 2013 WL 1814923 at *4, citing *Bethel v. Dixie Homecrafters, Inc.*, 192 F.R .D. 320, 323-24 (N.D.Ga.2000) (citation omitted). As such, "[w]here the moving party has already made an examination in the past, . . . the court will require a stronger showing of necessity before it will order repeated examinations." *Mayfield v. Continental Underwriters, Ltd.*,

(2007 WL 4522602, at *2-3 (W.D.La. Dec. 14, 2007) (finding no entitlement to third IME where there was no evidence that prior IME's had been inadequate).

Here, the first IME of Booth was obtained in February 2014, therefore there has not been a sufficient lag in time to warrant a second IME, nor has there been separate injuries calling for different specialists, as Booth has maintained that he suffered from a cervical neck injury from the inception of this action. Furthermore, as indicated during oral argument by counsel for Defendants, there is no new medical evidence which would warrant the necessity of a second IME of Booth, as the same evidence considered by Dr. Applebaum in February 2014 is the only medical evidence that exists now. Specifically, Booth did not report significant pain in February 2014 during the initial IME, nor has he reported pain above a level of 2 or 3 out of 10 since September 2013. Therefore, the Court finds because there is no new medical evidence, the recent recommendation of a cervical fusion by Dr. Voorhies, may be addressed during Dr. Voorhies deposition, scheduled to take place in the next few weeks, and is not sufficient good cause to warrant a second IME of Booth. Furthermore, a surgical recommendation alone does not constitute a change in circumstances where the pain complaints are not remarkable.

## IV.     Conclusion

**IT IS ORDERED** that **Defendants Motion to Compel Second Independent Medical Examination(R. Doc. 40)** is **DENIED**.

New Orleans, Louisiana, this 6th day of August, 2014

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

9